# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHN PADILLA,

      Applicant,

v.                                              CIV-06-0881 MV/LAM

GEORGE TAPIA, et al.,

      Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

1.     **THIS MATTER** is before the Court on Respondents' ***Motion to Dismiss the Application for Writ of Habeas Corpus With Prejudice*** (*Doc. 7*) (hereinafter, "Motion to Dismiss"), filed on October 17, 2006.  The Court has considered the parties' submissions and relevant law.[2]  For the reasons set forth below, the Court  recommends that the Motion to Dismiss be **GRANTED**, that Mr. Padilla's ***Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody*** (*Doc. 1*) (hereinafter, "Application") be **DENIED** as without merit, and that this

---

[1] **Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections  with the Clerk of the United States District Court for the District of New Mexico within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

[2] In support of their Motion to Dismiss, Respondents filed a ***Memorandum in Support of Respondent[s'] Motion to Dismiss the Application for Writ of Habeas Corpus With Prejudice*** (*Doc. 8*) (hereinafter, "Memorandum in Support"), on October 17, 2006.  In response, Mr. Padilla filed his ***Petitioner's Response to Respondents['] Motion to Dismiss Petition the Application for Writ of Habeas Corpus With Prejudice*** (*Doc. 10*), on October 27, 2006. Respondents did not file a reply in support of the Motion to Dismiss, making the Motion to Dismiss ready for ruling.

case be **DISMISSED WITH PREJUDICE**.  Because the issues in this case can be resolved on the record before the Court, the Court **FINDS** that an evidentiary hearing is unnecessary.[3]

2.     Mr. Padilla is incarcerated and proceeding *pro se*.  On September 18, 2006, he initiated this case by filing his Application seeking habeas relief pursuant to 28 U.S.C. § 2254. Because he is a *pro se* litigant, the Court construes his Application liberally and holds it to a less stringent standard than pleadings drafted by an attorney.[4]

3.     Although the claims in his Application are somewhat difficult to follow, the Court liberally construes his Application as claiming that: (a) his statutory rights under the Interstate Agreement on Detainers (hereinafter, "IAD"), 18 U.S.C. App. § 2,[5] were violated by the State of New Mexico's failure to bring him to trial on a habitual offender supplemental information that was the subject of a detainer lodged against him by the State within one-hundred and eighty days after he delivered written notice of his place of imprisonment outside the State and requested a final disposition of the supplemental information pursuant to the IAD; (b) his federal constitutional right to a speedy trial under the Sixth and Fourteenth Amendments was violated by the State's delay in bringing him to trial on the habitual offender supplemental information that was the subject of the detainer; and (c) his federal constitutional right to be free from cruel and unusual punishment under

---

[3]*See* 28 U.S.C. § 2254(e)(2); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

[4]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[5]The IAD is a compact among the States, the District of Columbia, territories and the United States.  It enables a participating State to obtain custody of a prisoner who is incarcerated in another jurisdiction to try him on criminal charges.  The State of New Mexico is a party to the IAD and the IAD is codified in New Mexico at N.M. Stat. Ann. § 31-5-12 (1978).  The IAD "is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction."  *Carchman v. Nash*, 473 U.S. 716, 719 (1985), citing *Cuyler v. Adams*, 449 U.S. 433, 438-442 (1981).

the Eighth and Fourteenth Amendments was violated by the State's delay in bringing him to trial on the habitual offender supplemental information that was the subject of the detainer.[6]  As relief, Mr. Padilla appears to ask the Court to order the State trial court to dismiss the supplemental information charging him as a habitual offender and, presumably, to vacate that portion of his sentence attributable to his habitual offender status.[7]

4.      The Court notes that it construes Mr. Padilla's claims somewhat differently than Respondents who construe his Application as claiming that: (a) New Mexico's courts are less judicially organized than other states and less protective of constitutional rights; and (b) he was sentenced as a habitual offender in violation of the IAD.[8]

### I. Exhaustion of State Court Remedies

5.      A state prisoner must generally exhaust available state court remedies before a federal court can consider the prisoner's habeas petition under 28 U.S.C. § 2254.[9]  The exhaustion requirement is considered satisfied "if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack."[10]  In their Memorandum in Support (*Doc. 8*), Respondents contend, without elaboration except to say that Mr. Padilla did not file an application in state court for post-conviction relief, that Mr. Padilla has not

---

[6]*See* Application (*Doc. 1*).  Although Mr. Padilla's Application (*Doc. 1*) includes several conclusory references to due process and liberty interest violations, a review of his Application in its entirety indicates that he is asserting claims for the violation of his rights under the IAD and the Sixth, Eighth and Fourteenth Amendments.

[7]*See* Application (*Doc. 1*) at 37th page.

[8]*See* Memorandum in Support (*Doc. 8*), at 7.

[9]*See* 28 U.S.C. § 2254(b)(1)(A); *Hawkins v. Mullin*, 291 F.3d 658, 668 (10 Cir. 2002).

[10]*Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

exhausted all state remedies available to him with regard to his claims.[11]  Nevertheless, in the same document, submitted by their attorney, Respondents state that they waive the exhaustion requirement and ask the Court to decide this case on the merits.[12]  Pursuant to 28 U.S.C. § 2254(b)(3), Respondents, through their counsel, may expressly waive the exhaustion requirement in § 2254(b)(1)(A).[13]  In this case, Respondents' written waiver of the exhaustion requirement is clearly and affirmatively stated by their attorney in Respondents' Memorandum in Support (*Doc. 8*).[14] Accordingly, the Court concludes that Respondents have waived the exhaustion requirement in 28 U.S.C. 2254(b)(1)(A) with regard to the claims in Mr. Padilla's Application.

## II.  Factual and Procedural Background

6.      On May 8, 2001, Mr. Padilla pled no contest to four felony counts of forgery in criminal case numbered CR-99-342 in the state district court in Chaves County, New Mexico.[15]  After Mr. Padilla pled no contest, the State filed a supplemental information stating that he was a habitual offender, on the basis of four prior felony convictions, which justified an enhancement of his sentence

---

[11]*See* Memorandum in Support (*Doc. 8*) at 3.

[12]*Id.*

[13]28 U.S.C. § 2254(b)(3) provides that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."

[14]Respondents' waiver statement is as follows: "Mr. Padilla has not exhausted all state remedies available to him in that he did not file an application in state court for post-conviction relief.  Respondent, however, waives this requirement and asks that this Court decide this matter on its merits."  Memorandum in Support (*Doc. 8*) at 3.

[15]*See* Answer (*Doc. 9*), Exhibit A (**Judgment, Sentence and Commitment**) at 1.

by eight years.[16]  Mr. Padilla failed to appear for his sentencing and a bench warrant was issued for

his arrest.[17]  Mr. Padilla was subsequently arrested in Arizona and incarcerated there.[18]

       7.        Arizona is a party to the IAD.[19]  While Mr. Padilla was still incarcerated in Arizona,

the District Attorney for New Mexico's Fifth Judicial District lodged a detainer against him there in

August of 2002, based on his pending sentencing charges in New Mexico.[20]  Although the details of

Mr. Padilla's request for a final disposition of this detainer are not entirely clear from the record,[21]

the parties do not dispute that Mr. Padilla requested a final disposition of this detainer under the IAD

or that the State of New Mexico failed to act on his request within one-hundred and eighty days after

---

[16]*Id.*, Exhibit N at 2.

[17]*Id.*

[18]*Id.*  Mr. Padilla's Petition for Writ of Certiorari filed with the New Mexico Supreme Court in his state
appeal, states that he was incarcerated in Arizona on January 16, 2002, on the outstanding warrant from New Mexico
and also on additional charges in Arizona.  *See* Answer (*Doc. 9*), Exhibit O at 2.

[19]*See* Ariz. Rev. Stat. Ann. § 31-481 (1970).

[20]In its opinion in Mr. Padilla's direct appeal, the New Mexico Court of Appeals gives August 14, 2002, as
the date this detainer was lodged against Mr. Padilla.  *See* Answer (*Doc. 9*), Exhibit N at 2.  However, a copy of this
detainer in the record appears to have a date-stamp showing that it was actually lodged against Mr. Padilla, by its
receipt in Arizona, on August 12, 2002.  *See* Answer (*Doc. 9*), Exhibit B to Exhibit I.  There are references in the
record to a previous detainer having been lodged against Mr. Padilla in Arizona on January 16, 2002, but the record
does not contain a copy of this detainer.  *See, e.g.,* Answer (*Doc. 9*), Exhibit K at 1.

[21]The record does not contain a copy of Mr. Padilla's request for disposition of this detainer; however, it does
contain a copy of letter dated December 17, 2002, from the Arizona Department of Corrections
(hereinafter, "Department") to the Chavez [sic] County District Attorney (hereinafter, "District Attorney"), referencing
the case number of Mr. Padilla's New Mexico criminal case.  *See* Answer (*Doc. 9*), Exhibit C to Exhibit I.  This letter
states that the Department forwarded a request for disposition from Mr. Padilla to the District Attorney's office on
September 10, 2002, by registered mail, that was signed for by the District Attorney on September 17, 2002, and
reminds the District Attorney of the 180-day time limit for action on the detainer under the IAD.  *Id.*  Additionally,
the record contains a copy of a letter dated March 26, 2003, from the Department to the presiding judge of Chaves
County, reiterating that the Department mailed a request for disposition from Mr. Padilla to New Mexico, "indicating
inmate's desire to be brought to trial to dispose of the untried charge."  *Id.*, Exhibit D to Exhibit I.  In this letter, the
Department asked that its letter be treated as a motion to dismiss the untried charges against Mr. Padilla with prejudice,
pursuant to the IAD, for New Mexico's failure to bring him to trial on the charges within the one-hundred-eighty day
time limit in Article III of the IAD.  *Id.*

its receipt by the prosecuting officer and the state district court as required by Article III(a) of the IAD.[22]

        8.      On September 22, 2003, Mr. Padilla filed a motion to dismiss his New Mexico criminal case.[23]  In this motion, Mr. Padilla argued that the IAD was violated by New Mexico's failure to bring him to trial on the charges that were the basis for his detainer within one-hundred and eighty days of New Mexico's receipt of his request for final disposition under the IAD.[24]  Citing the Ninth Circuit Court of Appeals decision in *Tinghitella v. State of California*, 718 F. 2d 308 (9th Cir. 1983), and asking the state district court to disregard a New Mexico appellate court decision on the subject,[25] Mr. Padilla argued that the state district court should find that the provisions of the IAD apply to detainers for sentencing, thereby providing a legal basis for the dismissal of his case.[26]  In addition, Mr. Padilla argued, in conclusory fashion, that his federal constitutional rights to due process and

---

[22]Article III(a) of the IDA provides, in relevant part, that:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint*: Provided, [t]hat for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

18 U.S.C. App. § 2, Article III(a) (emphasis added).

[23]*See* Answer (*Doc. 9*), Exhibit C.

[24]*Id.*

[25]The state appellate court decision is *State v. Sparks*, 716 P.2d 253, 255-257 (Ct. App. 1986) (holding that IAD did not apply to defendant who had pled guilty but failed to appear for sentencing).

[26]*See* Answer (*Doc. 9*), Exhibit C at 2.

equal protection under the Fifth and Fourteenth Amendments of the United States Constitution would be violated if his case was not dismissed.[27]

9.     On December 1, 2003, the state district court denied Mr. Padilla's motion to dismiss.[28] The judge denied his motion for two reasons.  First, the judge ruled that he was bound by a controlling New Mexico appellate decision, *i.e.*, *State v. Sparks*, 716 P.2d 253, 255-257 (Ct. App. 1986), which held that the IAD did not apply to a defendant who had pled guilty but failed to appear for sentencing.[29]  Second, the judge ruled that even assuming the speedy trial right extended to sentencing proceedings, Mr. Padilla had failed to establish that he had "suffered 'substantial and demonstrable' prejudice as a result of the delay" in his sentencing.[30]  In his ruling, the judge specifically noted that at a hearing held on November 10, 2003, Mr. Padilla had been "unable to articulate any prejudice that he suffered [as] a result of the delay."[31]

10.     Mr. Padilla and the State of New Mexico subsequently reached an agreement on sentencing.[32]  This resulted in the State filing an amended supplemental information against Mr. Padilla on April 15, 2004, charging him with being a habitual offender but stating only two prior felony convictions, and Mr. Padilla admitted to the two convictions.[33]

---

[27]*Id.*

[28]*See* Answer (*Doc. 9*), Exhibit E.

[29]*Id.* at 1.

[30]*Id.*

[31]*Id.* at 1-2.

[32]*See* Answer (*Doc. 9*), Exhibit N at 2.

[33]*Id.*; *see also* Answer (*Doc. 9*), Exhibit A at 1.

11.     On April 28, 2004, the state district court entered its judgment, sentence and commitment, sentencing Mr. Padilla to a total of fourteen years in prison, with three years suspended, leaving eleven years to be served in custody of the Department of Corrections  followed by three years of probation to be served concurrently with two years of parole.[34]   Because Mr. Padilla admitted to having two prior felony convictions, the state district court enhanced his sentence for each of the four felony counts of forgery by four years pursuant to state law.[35]

12.     On June 1, 2004, Mr. Padilla filed a notice of appeal in the state district court giving notice of his appeal from his judgment, sentence and commitment to the New Mexico Court of Appeals.[36]   In his docketing statement filed with the New Mexico Court of Appeals, Mr. Padilla asserted the following issues on appeal: (a) whether the State of New Mexico violated his constitutional rights to a speedy sentencing, due process and equal protection by failing to dispose of his sentencing within the time limits imposed by the IAD; and (b) whether he had a right under the IAD to have a disposition of his sentencing within one-hundred and eighty days of serving a request for disposition on the Chaves County District Attorney.[37]

---

[34]*See* Answer (*Doc. 9*), Exhibit A at 1-2.

[35]*Id.* at 2.  Mr. Padilla's sentence was enhanced pursuant to New Mexico's habitual offender statutes.  The most relevant statute, in effect at the time of his sentencing, provided that: "A person convicted of a noncapital felony in this state . . . who has incurred *two prior felony convictions* that were parts of separate transactions or occurrences or conditional discharge under Section 31-20-13 NMSA 1978 is a habitual offender and *his basic sentence shall be increased by four years*.  The sentence imposed by this subsection shall not be suspended or deferred."  N.M. Stat. Ann. § 31-18-17(B) (2003) (emphasis added).  Under New Mexico law, the habitual offender statutes do not create a new offense but merely provide a proceeding for enhancing sentences, and the proceeding for determination of habitual offender status "is a sentencing procedure and not a trial of an offense."  *State v. Nelson*, 634 P.2d 676, 677 (1981) (citation omitted).

[36]*See* Answer (*Doc. 9*), Exhibit F.

[37]*See* Answer (*Doc. 9*), Exhibit G at 2.

8

13.     On April 26, 2006, the New Mexico Court of Appeals issued its opinion in Mr. Padilla's appeal.[38]  The Court of Appeals, by a two-judge majority, affirmed the district court's judgment, sentence and commitment, although one judge dissented.[39]  The Court of Appeals held that Mr. Padilla, whose criminal liability had already been determined in the Chaves County proceeding, did not have a right under the IAD to a final disposition of his habitual offender status within one-hundred and eighty days of serving a request for disposition under the IAD because the IAD does not apply to sentencing and a habitual offender proceeding addresses sentence enhancement.[40]  In support of its decision, the Court of Appeals relied on its previous decision in *State v. Sparks*, 716 P.2d 253, 255 (Ct App. 1986) (holding that "a request for the disposition of an outstanding sentencing is not cognizable under the IAD"), the decision of the United States Supreme Court in *Carchman v. Nash*, 473 U.S. 716, 734 (1985) (holding that Article III of the IAD does not apply to probation revocation violation detainers), and  policy considerations of the IAD.[41]  The New Mexico Court of Appeals did not reach Mr. Padilla's constitutional claims.

14.     On May 16, 2006, Mr. Padilla filed a petition for writ of certiorari with the New Mexico Supreme Court, seeking review of the New Mexico Court of Appeals' decision.[42]  The petition for writ of certiorari presented the following issues for review: (a) whether the Court of Appeals was correct in holding that proceedings initiated by an information that alleges facts which

---

[38]*See* Answer (*Doc. 9*), Exhibit N.

[39]*Id.* at 7-10.

[40]*Id.* at 1.

[41]*Id.* at 3-5.

[42]*See* Answer (*Doc. 9*), Exhibit O.

must then be proved was outside the plain meaning of the IAD which directs that it applies to any untried indictment, information or complaint; and (b) whether the Court of Appeals was correct in holding that the IAD does not apply to proceedings initiated by a prosecutor filing a habitual information under the analysis in *Carchman v. Nash*, 473 U.S. 716 (1985) and  *State v. Sparks,* 716 P.2d 253 (Ct. App. 1986).[43]

15.     On June 12, 2006, without issuing an opinion, the New Mexico Supreme Court entered an order denying Mr. Padilla's petition for writ of certiorari.[44]  Mr. Padilla did not appeal his case further and the New Mexico Court of Appeals entered its mandate to the state district court in his appeal on August 1, 2006.[45]

16.     On September 18, 2006, Mr. Padilla filed his Application for federal habeas relief in this Court.[46]  His Application was timely filed.

### III.  Claims for Habeas Corpus Relief

### A.  Standards of Review

17.     The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996[47] (hereinafter, "AEDPA"), govern this case.[48]  The Court cannot grant Mr. Padilla habeas relief pursuant to 28 U.S.C. § 2254(d), unless the decision in his state court

---

[43]*Id.* at 4.

[44]*See* Answer (*Doc. 9*), Exhibit P.

[45]*Id.*, Exhibit Q.

[46]*See **Application for a Writ of habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody*** (*Doc. 1*).

[47]110 Stat. 1214.

[48]The standards in AEDPA apply to this case because the Application was filed after the effective date of AEDPA which was April 24, 1996.  *See Upchurch v. Bruce*, 333 F.3d 1158, 1162 (10th Cir. 2003), *cert. denied*, 540 U.S. 1050 (2003).

proceeding (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2).  The United States Supreme Court has construed these statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA.[49]

18.     The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

19.     Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law."  *Williams v. Taylor*, 529 U.S. at 413.  A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.*  However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions . . . .  [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

---

[49]*See, e.g., Bell v. Cone*, 543 U.S. 447 (2005) (*per curiam*); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (*per curiam*); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (*per curiam*); *Early v. Packer*, 537 U.S. 3 (2002) (*per curiam*); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Bush v. Neet*, 400 F.3d 849 (10th Cir. 2005); *Jackson v. Ray*, 390 F.3d 1254 (10th Cir. 2004); *Miller v. Mullen*, 354 F.3d 1288 (10th Cir. 2004).

*See also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting presumption that state courts know and follow the law); *Miller v. Mullin*, 354 F.3d 1288, 1292-1293 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law). Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply. So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision."[50] Moreover, if a state court's decision does not conflict with the reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. at 17.

20.     Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. at 413. However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. at 75-76 (internal quotations and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76.

---

[50]*See Cook v. McKune*, 323 F.3d 825, 830-831 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision); *compare Morris v. Burnett*, 319 F.3d 1254, 1267 (10th Cir. 2003) ("[w]hen the state court addresses the great bulk of the issues raised by the petitioner's brief in that court but omits to address a particular claim, we have inferred that the claim was not decided 'on the merits' in the state court . . . [and,] [t]herefore, we do not apply the deferential review set forth in 28 U.S.C. § 2254(d) with respect to that claim.")

21.     Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

22.     The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court proceedings. *See* 28 U.S.C. § 2254(d).  If the state court did not adjudicate a claim on the merits, and the claim is not otherwise procedurally barred, a federal court reviews the claim *de novo* under the pre-AEDPA standard of review.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999)). Under the pre-AEDPA standard of review, a state court's findings of fact are afforded a presumption of correctness and both legal conclusions and mixed questions of law and fact are reviewed *de novo*. *See Castro v. Ward*, 138 F.3d 810, 815-816 (10th Cir. 1998).  "[T]he presumption of correctness will continue to apply to any findings of fact underlying mixed questions."   *Id.* at 816 (quoting *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir. 1989)).  See *also* 2 Randy Hertz and James S. Liebman, Federal Habeas Corpus Practice and Procedure, § 32.1, at 1565 (5th ed. 2005) (if § 2254 habeas claim was not adjudicated on the merits, federal court must employ pre-AEDPA standard of *de novo* review of legal and mixed legal-factual rulings).

### *B.   Analysis*

23.     Subject to the foregoing standards, the Court considers Mr. Padilla's claims in this proceeding.

### 1. *Violation of Statutory Rights Under the IAD*

24.      For his first claim, Mr. Padilla contends that his statutory rights under the IAD were violated by the State of New Mexico's failure to bring him to trial on the habitual offender supplemental information that was the subject of the detainer lodged against him by the State within one-hundred and eighty days after he delivered written notice of his place of imprisonment in Arizona and requested a final disposition of the supplemental information pursuant to the IAD.  Because this claim was adjudicated on the merits in Mr. Padilla's state court proceedings in New Mexico, the Court reviews this claim under the AEDPA deferential standard of review pursuant to 28 U.S.C. § 2254(d).

25.      Article III(a) of the IAD provides that a prisoner against whom a detainer has been lodged  "shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint . . . ."[51]  Article V(c) of the IAD provides that "in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon

---

[51]Interstate Agreement on Detainers, 18 U.S.C. App. § 2, Article III(a).

shall cease to be of any force or effect."[52]  While the IAD is a matter of state law, it is also a law of the United States and subject to federal construction.[53]

26.    In Mr. Padilla's state court proceeding, the New Mexico Court of Appeals held that his request for disposition of his habitual offender supplemental information under the IAD was not subject to the time limits in the IAD because the IAD did not apply to sentencing.  In reaching its decision, the Court of Appeals relied, in part, on the Supreme Court's decision in *Carchman v. Nash*, 473 U.S. 716 (1985).  In *Carchman*, the Supreme Court construed the phrase "untried indictment, information or complaint" in Article III of the IAD and concluded that this phrase "refers to criminal charges pending against a prisoner" but did not include a probation violation charge  "which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution."[54]  Based on this construction, the Supreme Court concluded from the language of the IAD that a detainer based on a probation violation charge was not a detainer based on an "untried indictment, information or complaint" within the meaning of Article III.[55]  The Supreme Court found additional support for this construction of Article III in the IAD's federal legislative history which it said "indicates that Congress, which adopted the Agreement in 1970, see Pub.L. 91-538, 84 Stat. 1397, considered the Agreement to apply only to detainers based on untried criminal charges."[56]  The

---

[52]*Id.*, Article V(c).

[53]*See Carchman v. Nash*, 473 U.S. 716, 719 (1985) (§ 2254 habeas case holding that the IAD "is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction"); *see also Cuyler v. Adams*, 449 U.S. 433, 438 (1981) ("congressional consent transforms an interstate compact . . . into a law of the United States").

[54]*Carchman v. Nash*, 473 U.S. at 725.

[55]*Id.* at 726.

[56]*Id.* at 728-729.

Supreme Court noted that its interpretation was reinforced by the adjective "untried" which it stated "would seem to refer to matters that can be brought to full trial."[57]

27.     Although the facts in Mr. Padilla's case are somewhat different from the facts in the *Carchman* case, in that the detainer in Mr. Padilla's case was based on a habitual offender charge rather than a probation revocation charge, both cases involve a detainer based on something other than untried criminal charges.  In Mr. Padilla's case he had already pled guilty to the criminal charges against him in New Mexico and the detainer lodged against him in Arizona was only to determine his status as a habitual offender and dispose of his sentencing.[58]  These circumstances are close enough to the circumstances in the *Carchman* case that the Court finds the *Carchman* case controlling and the decision in Mr. Padilla's state court proceeding consistent with the decision in the *Carchman* case.  Accordingly, because the underlying facts are not in dispute in this case, the Court concludes that the detainer lodged against Mr. Padilla based on his habitual offender charge was not a detainer based on an "untried indictment, information or complaint" within the meaning of Article III(a) of the IAD and, therefore, the decision in Mr. Padilla's state court proceeding was neither "contrary to" nor "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[59]

28.     Notwithstanding the foregoing, even if the Court were to assume that the time limit in Article III(a) of the IAD was violated with regard to Mr. Padilla's habitual offender detainer, there

---

[57]*Id.* at 724.

[58]Under New Mexico's habitual offender statutes, status as a habitual offender is based on one or more prior felony convictions.  N.M. Stat. Ann. § 31-18-17.  Habitual offender status is charged in an information and determined by the court.  N.M. Stat. Ann. § 31-18-19 and -20.

[59]28 U.S.C. § 2254(d)(1).

is no showing in the record, and he has not alleged, that he was prejudiced as a result of the IAD violation. A showing of "special circumstances" is required to permit a collateral attack for violations of the IAD. *See Knox v. Wyoming Dep't. of Corr. State Penitentiary Warden*, 34 F.3d 964, 967 (10th Cir. 1994) ("only 'special circumstances' permit collateral attack for violations of the IAD"). These "special circumstances" must rise to the level of a "prejudicial error that qualifies as a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Id.* at 968 (internal quotations and citations omitted.). Mr. Padilla has not made the requisite showing of prejudice in this case.

29.     Based on the foregoing, the Court concludes that Mr. Padilla has failed to allege or establish that the New Mexico Court of Appeals' decision on this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2).

### 2. *Violation of Right to a Speedy Trial Under Sixth and Fourteenth Amendments*

30.     For his second claim, Mr. Padilla contends that his federal constitutional right to a speedy trial under the Sixth and Fourteenth Amendments was violated by New Mexico's delay in bringing him to trial on the habitual offender supplemental information that was the subject of his detainer in Arizona. Although Mr. Padilla asserted this claim in his state court proceedings,[60] the

---

[60]In his motion to dismiss filed with the state district court in his criminal case in New Mexico, Mr. Padilla asserted that he had a federal constitutional right to a speedy sentencing which was violated by the delay in his sentencing, although he failed to cite the Sixth Amendment in his motion. *See* Answer (*Doc. 9*), Exhibit C at 2. The state district court denied this claim on the ground that Mr. Padilla had failed to show that he was prejudiced by the delay in his sentencing. *Id.*, Exhibit E. In his appeal to the New Mexico Court of Appeals, Mr. Padilla argued that his Sixth Amendment right to a speedy trial applied to his sentencing and was violated by the delay in his sentencing. *See* Answer (*Doc. 9*), Exhibit K at 5-17.

17

state appellate courts did not decide the claim.  Therefore, the Court reviews this claim under the *de novo* pre-AEDPA standard of review.  *See, e.g., Romano v. Gibson*, 239 F.3d 1156, 1166 (10th Cir.2001) (reviewing *de novo* where "on direct appeal, [petitioners] did challenge the trial court's exclusion of this evidence on federal constitutional grounds, [but] the Oklahoma Court of Criminal Appeals addressed these claims only under state law").  Under this standard, the state court's findings of fact (including those factual findings underlying mixed questions of law and fact) are afforded a presumption of correctness and both legal conclusions and mixed questions of law and fact are reviewed *de novo*.  *See Castro v. Ward*, 138 F.3d 810, 815-816 (10th Cir. 1998).

31.    The Sixth Amendment guarantees the right to a speedy trial.[61]  The Fourteenth Amendment makes this guaranty applicable to the states.  *Klopfer v. State of North Carolina*, 386 U.S. 213, 222 (1967).  Although the United States Supreme Court has not expressly held that the Sixth Amendment right to a speedy trial applies to sentencing, it has assumed that this is the case in its analysis of sentencing delays. *See Pollard v. United States*, 352 U.S. 354, 361 (1957) (Supreme Court assumed *arguendo* that Sixth Amendment right to a speedy trial was applicable to sentencing delay).  The Tenth Circuit has also followed this practice.  *See Perez v. Sullivan*, 793 F.2d 249, 252-58 (10th Cir. 1986) (court treated  Sixth Amendment right to a speedy trial as applicable to habitual offender sentencing proceeding and analyzed delay in sentencing under speedy trial standards articulated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

32.    Assuming *arguendo* that the Sixth Amendment right to a speedy trial attached to Mr. Padilla's sentencing, the Court finds no merit to his claim that the delay in his sentencing on the

---

[61]The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const., Amend. VI.

habitual offender supplemental information denied him the right to a speedy trial.  Paramount in this determination is the Court's conclusion that Mr. Padilla has made no showing that he was prejudiced by his sentencing delay.  "While a showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation, . . . we have great reluctance to find a speedy trial deprivation where there is no prejudice . . . .  This is especially true in a post-conviction situation.  In fact, it might be said that once a defendant has been convicted it would be the rarest of circumstances in which the right to a speedy trial could be infringed without a showing of prejudice." *Perez v. Sullivan*, 793 F.2d at 256 (citations omitted).  "Most of [the] interests [which the speedy trial guarantee is designed to protect] diminish or disappear altogether once there has been a conviction.  Because the rights of society proportionately increase, the prejudice claimed by the defendant must be substantial and demonstrable."  *Id.*  In this case, Mr. Padilla has made no showing that he was prejudiced by the delay in his sentencing.  Therefore he has made no showing that he is entitled to relief on this claim under Section 2254.

### 3.  Cruel and Unusual Punishment

33.     Mr. Padilla contends that his federal constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments was violated by the State's delay in bringing him to trial on the habitual offender supplemental information that was the subject of the State's detainer.  This claim is extremely brief and conclusory and Mr. Padilla cites no legal authority in support of this claim.  Mr. Padilla provides no explanation of how the delay in the disposition of his habitual offender status in New Mexico, while he was incarcerated in Arizona on additional charges brought there, as well as the New Mexico warrant and detainer, constituted cruel and unusual punishment and violated his rights under the Eighth and Fourteenth Amendments.

19

34.     Mr. Padilla's *pro se* status does not relieve him of the obligation to allege sufficient facts on which a recognized legal claim can be based.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim).  Moreover, although Mr. Padilla's *pro se* Application must be liberally construed, the Court is "not required to fashion [his] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."  *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall v. Bellmon*, 935 F.2d at 1110).  Mr. Padilla's Application provides no basis for determining the nature of this claim.  Accordingly, the Court finds that habeas relief is not warranted on this claim.

### C. Conclusion

35.     For the foregoing reasons, the Court finds that habeas relief is not warranted on Mr. Padilla's claims.  Therefore, the Court recommends that Respondents' motion to dismiss be granted, Mr. Padilla's application for habeas relief be denied and this case be dismissed with prejudice.

### RECOMMENDED DISPOSITION

The Court recommends that Respondents' ***Motion to Dismiss the Application for Writ of Habeas Corpus With Prejudice*** (*Doc. 7*) be **GRANTED**, that Mr. Padilla's ***Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody*** (*Doc. 1*) be **DENIED** as without merit, and that this case be **DISMISSED WITH PREJUDICE**.


*Lourdes A. Martínez*
_____
**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**

20